*Court of Appeals, Second Circuit, Parish of Concordia.*

## LOUIS TRAGAR *v.* JOHN M. CLAYTON.

1. In questions of assessment, jurisdiction is determined by the amount of the tax demandable upon the sum in dispute between the taxpayer and the assessor.

2. Where the law indicates a particular method of contesting assessments, and fixes a delay within which it must be done, the Courts will not interfere in behalf of one who has neglected to comply with its provisions.

3. In a suit to reduce assessments, the burden of proof is on the taxpayer to establish error on the part of the assessor.

4. The Courts are not, by the law, restricted, *simply* to enquiring into questions of valuation. They may relieve where there have been double assessments, or assessments in the wrong name, etc.

5. Where, upon the visit of the assessor's deputy, the taxpayer suggested a figure as his valuation, which was put down in one column, as required by law, and, upon final action, the assessor himself, in another column, intended for that purpose, places the sum he considers just, the action of the latter is binding. .

6. The taxpayer was not relieved, by the conduct of the deputy, from the duty of inspecting the rolls, and making objection within the legal delay.

7. If the sum fixed upon by the assessor is fair, the Court will not reduce, simply because he has reached this just conclusion, in an irregular manner.

*Appeal from the Ninth Judicial District Court. Hough, Judge.*

*Boatner & Mason,* for plaintiff, appellant.

*H. R. Steele,* District Attorney, for defendant.

FARMER, J.—This is an ordinary action to test the correctness of the assessment of plaintiff's property, made in the year 1880. He complains that the assessment of two tracts of land was agreed upon, between himself and the deputy assessor, at \$15,080 and that the column, in the "tax list," for individual assessment was filled up at that sum by the said *deputy*; but that, afterwards, the *assessor* filled up the second column, for assessor's assessment, at \$20,000, without notice to him or other knowledge on his part; and that the "tax roll" was made from these increased figures.

The defendant excepted, that the court had no jurisdiction or authority, in this proceeding, to enquire into the value of the property, the assessment of which is in controversy, for the reason that, the law having provided a special remedy for the relief of those who are aggrieved by the assessment of their property for the purpose of taxation, and no arbitration or appeal having been taken in this case, the same has become final, and cannot be regulated by a direct suit.

Judgment was rendered in favor of the defendant, dismissing plaintiff's demand, from which the latter has appealed to this Court.

The incorrectness, alleged to be contained in the assessment, is $5720; and it is admitted that the total taxes, State, levee district, parish, and to pay judgments, exceed five per cent., fifty mills, making the matter in dispute the liability to pay more than two hundred dollars and less than one thousand dollars of taxes.

The plaintiff complains that *he* should have been *notified* that the assessor would not accept the plaintiff's valuation; and that the *assessor should have called* to his assistance the arbitrators provided for by Sec. 18, Act 77 of 1880, as in case of disagreement.

The defendant avers that arbitrators are to be appointed only on the *demand of the property holder*, in case of disagreement, as to the valuation, between the assessor and the taxpayer.

The first step in the assessment of property is the affixing by the taxpayer of his own valuation, in the first column of the " tax list," (Sec. 14); the second is the *actual swearing* to the said list, as required by Secs. 13 and 15; the third is the filling up of the second column of valuation by the assessor; and, then, in case of disagreement, the taxpayers *can* demand an arbitration, Sec. 18. On such *demand* being made, it is the duty of the assessor to have the arbitration made; from which the taxpayer, alleging, under oath, that gross injustice has been done him, may appeal to the courts.

We consider that this mode of procedure is as easy and as favorable to the taxpayer as could reasonably be asked; and that this is the lawful mode to obtain a reduction in valuation. The statutory proceedings should be followed in such cases. 31 La. Ann. 272.

Section 51, Act 77 of 1880, extends further than section 18, and covers the test of other incorrectness; for instance, if the property has been twice assessed to the same person; or, after being assessed to one person and being sold by him, has been again assessed to the purchaser; or if the property is exempt from taxation.

But we do not think that it was intended by Art. 203 of the Constitution, or by the Revenue Act, 77 of 1880, to constitute the Courts the assessors of the mere valuation of property, except as a last resort to correct the injustice done by the ordinary mode of assessment.

The taxpayer should look after his assessment, *comply with the law himself;* take the proper oath ; return the *actually* sworn " list;" and, if the assessor values the property higher than himself, demand an arbitration, *at the hands of his neighbors;* and *then* appeal to the courts.

In this case, the plaintiff did not swear to his own valuation ; has not alleged, under oath, that injustice has been done him; and has not sworn or otherwise attempted to prove that the property was worth less than the assessor's valuation.

He complains only that his valuation was not objected to by the deputy assessor, who himself wrote plaintiff's valuation in the " list;" that there was no disagreement between him and the deputy ; and that the subsequent increase in the valuation, made by the assessor, was done without his knowledge or consent.

But suppose that the plaintiff had been assessed entirely by the assessor, without having been furnished with any " list" and entirely without his knowledge; still, if the valuation is correctly made by the assessor, the courts could not be called upon to *reduce* it below the actual taxable valuation it possesses.

The assessor is an officer, bound by severe laws to make correct valuations. His deputies and he, himself, should proceed strictly according to law to make formal assessments. But the fact that a deputy filled up *for a taxpayer* the column which the *latter should fill up for himself*, and the fact that the deputy did not object to the figures or otherwise intimate a disagreement, cannot bind the assessor or the State to accept those figures, *unless they are correct*. If increased, the taxpayers all have the same mode of ascertaining that fact and of remedying it.     lulled into the belief that their valuations

are acceptable to the assessor, and thus deprived of the resort to the arbitration, provided for by Sec. 18, the assessor would be censurable; and the Courts would grant relief, under Sec. 51 of said Act and Art. 203 of the Constitution.

But they would grant relief only against an incorrect assessment, notwithstanding the irregularity in the mode of making it; and unless over-valuation be shown, there cannot be a *reduction.* We find no over-valuation in this case. Therefore it is adjudged and decreed that the judgment of the District Court is affirmed, with costs of appeal.

Rehearing refused.